UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
Tony McMillian                )
6002 Hawthrone Street         )
Cheverly, Maryland  20785     )
                              )
     Plaintiff                ) Civil Action No.
                              )
vs.                           )
                              )
District of Columbia          )
c/o Mayor Anthony Williams    )
(a Municipal Corporation)     )
1350 Pennsylvania Avenue, N.W.)
Washington, D.C.  20004       )
                              )
D.C. Fire & Emergency         )
Medical Services Department   )
1923 Vermont Avenue, N.W.     )
Washington, D.C.  20001       )
                              )
Mr. Thomas N. Tippett         )
indivdually and his former    )
official capacity as the      )
former Fire Chief of the      )
D.C. Fire & EMS Bureau        )
1923 Vermont Avenue, N.W.     )
Washington, D.C.  20001       )
                              )
     Defendants               )
                              )
Serve:                        )
Office of the Corporation Counsel )
1350 Pennsylvania Avenue, N.W.)
Room 4401                     )
Washington, D.C.  20004       )
_____)
```

**C O M P L A I N T**

COMES NOW Plaintiff, Tony McMillian, by and through his attorney, Bernard C. Coleman, Jr., and for his Complaint states as follows:

**I.    THE PARTIES**

1. Plaintiff is an individual and resides at 6002 Hawthrone Street, City of Cheverly, County of Prince George's, State of Maryland at all relevant times relevant thereto.

2. Defendant, the District of Columbia, (hereinafter "the District") is a governmental body responsible for various District agencies and departments, including the District of Columbia Fire and Emergency Medical Services.

3. Defendant, the District of Columbia Fire and Emergency Medical Services, (hereinafter "EMS") is an agency of the District of Columbia Government responsible for rendering fire and emergency medical services to the citizens and residents of the District.

4. Defendant, Interim Fire Chief Thomas T. Tippett, white male, at all relevant times therefore, was the official as District Chief of Fire and EMS Bureau who instituted personnel actions against the plaintiff.

## II.    JURISDICTION AND VENUE

5. On November 20, 2000, Plaintiff filed a charge of discrimination against Defendants with the DC Fire and EMS EEO office for unlawful demotion and the case was assigned to Ms. Fredreika W. Smith, EEO Officer. ( A copy of said charge is attached hereto and incorporated herein by reference as Exhibit A)

6. On January 18, 2001, plaintiff received a final notice from Ms. Fredreika W. Smith, EEO Officer, informing the plaintiff to file a claim for discrimination with the Office of Human Rights since he had not been returned to his original position as recommended by Ms. Smith. (A copy of said charge is attached hereto and incorporated herein by reference as Exhibit B)

7. On January 23, 2001, plaintiff filed a complaint of discrimination with the Office of Human Rights. (A copy of said charge

is attached hereto and incorporated herein by reference as Exhibits A & B)

8. On April 16, 2001, plaintiff received a final notice from the Office of Human Rights. (A copy of said notice is attached hereto and incorporated herein by reference as Exhibit C)

9. Plaintiff received a letter dated April 26, 2004 from the Office of Human Rights that a determination had been made on his charge of discrimination. (A copy of said notice is attached hereto and incorporated herein by reference as Exhibit D)

10. On May 12, 2004, plaintiff filed a charge of discrimination against Defendants with the United States Equal Opportunity Commission (the "EEOC"), alleging that he was discriminated against on the basis of race in violation of Title VII.

11. On May 25, plaintiff filed supplemental documents with the United States Equal Opportunity Commission alleging that he was discriminated against on the basis of race in violation of Title VII.

12. On August 23, 2004, plaintiff received a notice of right to sue from the EEOC, advising him that he had 90 days to file suit against the defendants under Title VII. (A copy of said notice is attached hereto and incorporated herein by reference as Exhibit E)

13. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

14. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. Sections 1331 & 1343; this being a proceeding seeking to enforce rights and remedies secured under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. Section 2000-e, et seq. (Hereinafter referred to as "Title VII")

15. Jurisdiction is further invoked pursuant to 28 U.S.C. Sections 2201 and 2202, this being an action for a declaratory judgment declaring illegal the acts of defendant complained of herein.

16. Venue in this district is proper under 28 U.S.C.A. Section 1391(b) as the parties reside in this judicial district and the events giving rise to this action occurred in this judicial district.

### III. FACTS RELEVANT TO ALL CLAIMS

17. On June 27, 1977, plaintiff was hired by the Defendant in the position of Emergency Medical Technician (EMT) and at all relevant times hereto was employed by Defendant.

18. Since being employed by the defendant for the past twenty-seven (27) years the plaintiff has held the positions of Emergency Medical Technician (EMT) from June 27, 1977 to May 6, 1987; Intermediate Paramedic from May 6, 1987 to November 4, 1988; Acting Compliance Officer in the summer of 1988 for 120 days; Compliance Officer/Staff Assistant from November 4, 1988 to August 4, 1997; Supervisory Paramedic from August 4, 1997 to February 28, 2000.

19. Plaintiff was returned to the present position of Supervisory Paramedic on April 4, 2004.

20. Plaintiff remained out of the position of Supervisory Paramedic for four years, one month and one day.

21. During plaintiff's tenure with the defendant, he has received "Outstanding Performance" ratings for the years 1985 through 1995 and "Excellent Performance" ratings for the years 1996 through 2000.

22. Plaintiff has undergone extensive training in his field and has received over thirty (30) letters of commendations and over thirty (30) awards in the past twenty-seven (27) years.

23. At all times relevant hereto, plaintiff performed his duties to defendant's legitimate satisfaction.

24. During plaintiff's tenure as Compliance Officer his duties and responsibilities were numerous and he was responsible for investigating complaints of employees and negotiating informal resolution(s), if possible. (A copy of said position description is attached hereto and incorporated herein by reference as Exhibit F)

25. As Compliance Officer plaintiff represented the District's position in a claim of racial discrimination filed by a white male by the name of Chris J. Zervas.

26. By means of nepotism and cronyism, Chris J. Zervas was hired as an Emergency Medical Technician in 1979 and was promoted to supervisor in 1980.

27. Chris J. Zervas filed a total of three (3) separate actions for discrimination against the Department as early as July 28, 1988.

28. Chris J. Zervas' claim of racial discrimination failed at all the administrative levels, but one matter was later brought to federal court in this district, civil action, Zervas vs. District of Columbia, et al., 91-117.

29. The friends of Chris J. Zervas, who were in upper management in the Fire Department, settled a meritless case for $70,000.00 in May of 1996 and promoted Chris J. Zervas to the position of captain; effectively, maintaining the pattern of nepotism and cronyism within the Fire Department.

30. The plaintiff in his position as Compliance Officer should have had input into whether Chris J. Zervas' case merited a settlement of $70,000 and a promotion to captain.

31. The plaintiff wrote in his end of fiscal year report to Fire Chief Otis Latin that the award of $70,000 and promotion of Chris Zervas was based upon unfounded facts and allegations.

32. The plaintiff in a memorandum reminded Fire Chief Latin that the Office of Compliance was circumvented and requested that the functions of the Office of Compliance not be circumvented again.

33. Once this report was disseminated plaintiff began experiencing difficulties that he had never experienced in his prior years of service.

34. On December 19, 1999, Thomas N. Tippett, a white male, was made the interim Fire and EMS Chief.  Chief Tippett made William Mould, a white male, the Assistant Fire and EMS Chief and made him responsible for the day to day operations of the EMS Bureau.

35. Plaintiff attended a meeting on February 21, 2000, where it was announced by Assistant Chief Mould that some people were not made to be supervisors and some would be removed from the role of supervisor.

36. The plaintiff questioned Assistant Chief Mould's intentions and questioned how many supervisors would be removed and Assistant Chief Mould responded, "three or four."

37. On February 28, 2000, plaintiff was informed by EMS Battalion Chief Lillian B. Carter that she had been directed by Assistant Chief Mould to inform the plaintiff that he was detailed to the Office of Continuing Quality Improvement (CQI) without supporting personnel action

6

documents. (A copy of said notice is attached hereto and incorporated herein by reference as Exhibit G)

38. On February 28, 2000, there were three (3) African-American males who were removed from the position of Supervisory Paramedic; namely, the plaintiff, Tony McMillian, Paul A. Bullock and William W. McLaughlin.

39. While holding the title of interim, Chief Tippett demoted Danny R. Mott, a black male and replaced him with Chris J. Zervas, a white male, into Mott's position as Deputy Director of the EMS Bureau.

40. While serving as Interim Chief from November 1999 until October 2000, Chief Tippett made numerous other reassignments and demotions of black employees without the proper supporting personnel documentation.

41. Plaintiff requested from Assistant Chief Mould the proper authorizations and removal documentations as outlined in the District Personnel Manual, but to date no documentation(s) has been received.

42. After being removed from his position as Supervisory Paramedic, the plaintiff's net income went from $2097.03 every two weeks to $789.00 every two weeks.

43. Due to the severe loss of income, plaintiff suffered financial hardships, marital discord and problems, depression, anxiety, and work environment related stress.

44. Plaintiff participated in group therapy, anger management and was prescribed the following medications over the course of four and a half years: Desyrel, Zoloft, Tagamet, Zocor, Zantac, Zyprexa, Percocet, Paxil, Allegra, Metronidazole, Biaxin, Protonix and Doxycycline.

45. Plaintiff took leave from work from October 10, 2000 until November 2, 2000; then worked until December 1, 2000 and was out on annual leave until the end of 2000.

46. On or about October 19, 2000, plaintiff filed for Workmen's Compensation with a claim for work-related stress.

47. On November 20, 2000, the plaintiff filed an EEO complaint of racial discrimination with the D.C. Fire and EMS EEO office and the case was assigned to Ms. Fredreika W. Smith, EEO Officer.

48. In a memorandum dated December 28, 2000, from Ms. Fredreika W. Smith to Dr. Fernando Daniels, III, Medical Director, EMS Bureau, she informed him that Deputy Fire Chief William E. Mould did not have sufficient reason to continue to keep EMS Lieutenant McMillian detailed out of his position. (A copy of said letter is attached hereto and incorporated herein by reference as Exhibit H)

49. Upon his return to work and after undergoing a routine annual physical on January 10, 2001, plaintiff was sent home on sick leave by the Department's psychiatrist due to anxiety and stress.

50. From January 23, 2001 to February 1, 2002, the plaintiff was on sick leave due to mental stress. Management placed the plaintiff on sick leave rather than administrative leave as required by the District Personnel Manual, which in turn caused the plaintiff to exhaust all of his annual and sick leave by June 2001.

51. On January 18, 2001, plaintiff received a final notice from Ms. Fredreika W. Smith, and in her letter she stated, "It is my opinion that Lieutenant McMillian must resume the duties and responsibilities of his position just as soon as returns to duty." (A copy of said letter is attached hereto and incorporated herein by reference as Exhibit B)

8

52. On January 23, 2001, the plaintiff filed a complaint of discrimination against the District of Columbia Government with the D.C. Office of Human Rights.

53. On April 16, 2001, the D.C. Office of Human Rights re-wrote plaintiff's complaint without his knowledge and consent and requested him to sign the document.

54. The plaintiff returned to work on February 1, 2002 after taking an annual physical examination on February 26, 2002 and was considered fit-for-duty.

55. On May 1, 2002, the plaintiff was directed by management to report for an additional fitness-for-duty evaluation.

56. On September 24, 2002, the plaintiff was informally interviewed by management regarding an alleged sexual harassment complaint lodged against the plaintiff and others by Charlene Campbell.

57. This incident was thoroughly investigated for several months and the plaintiff was exonerated from any wrongdoing.

58. On or about November 15, 2002, the plaintiff was again accused of sexual harassment.

59. This sexual harassment complaint was lodged against the plaintiff by Robin Scott.

60. On this occasion there was no investigation into the allegation of sexual harassment against the plaintiff.

61. On December 3, 2002, the plaintiff reported to an unexpected meeting in the office of the Fire Chief regarding the alleged second incident of sexual harassment lodged against the plaintiff.

62. In attendance at this December 3, 2002 meeting were Fire Chief Adrian Thompson, General Counsel Theresa A. Cusick, Fredreika W. Smith and the plaintiff.

63. It was during this meeting on December 3, 2002, that the plaintiff experienced an acute anxiety attack and chest pain and was out on sick leave from December 3, 2002 until December 8, 2002.

64. On December 6, 2002, the plaintiff was charged with sexual harassment and placed on a seven day suspension without pay, which was effective upon his return to work on December 4, 2003.

65. From December 3, 2002, until December 4, 2003 plaintiff was unable to work due to job-related mental stress.

66. After four years, one month and a day, the plaintiff was returned to his position as supervisory paramedic on April 4, 2004.

67. Plaintiff alleges that his demotion arose from a longstanding practice in the form of racial discrimination and racial animus that allows decisions regarding personnel decisions within the District Fire Department and EMS Bureau to be made on the basis of race.

68. Plaintiff alleges that it is a longstanding practice that an individual (plaintiff) can be severely punished if one interferes or questions established practices of nepotism and cronyism within the District Fire Department and EMS Bureau.

**COUNT I**

**(Employment Discrimination)**

69. Plaintiff incorporates by reference the facts alleged in paragraphs 1 through 68 of this Complaint.

70. The defendant, intentionally designed demotion schemes, which operated invidiously to discriminate of the basis of race and color.

## COUNT II

(Discrimination Based on Race and Color)

71. Plaintiff incorporates by reference the facts alleged in paragraphs 1 through 70 of this Complaint.

72. The defendant did intentionally and deliberately mistreated plaintiff based solely on the grounds of race and color.

73. The defendant, by and through its employees and agents discriminated against plaintiff solely on the grounds of race and color.

## COUNT III

**(Conspiracy to Interfere with Civil Rights)**

74. Plaintiff incorporates by reference the facts alleged in paragraphs 1 through 73 of this Complaint.

75. The defendant, its employees and agents had knowledge of the wrongs and conspired against the plaintiff, had power to prevent the commission of the wrongful acts and refused to prevent them.

76. The defendant, by and through its employees and agents conspired to interfere with plaintiff's civil rights.

## COUNT IV

**(Disparate Treatment)**

77. Plaintiff incorporates by reference the facts alleged in paragraphs 1 through 73 of this Complaint.

78. The defendant, by and through its employees and agents treated plaintiff differently from Caucasian employees in promotion, discipline matters, wages and salary.

79. The defendant, by and through its employees and agents intentionally and deliberately instituted a pattern and practice of disparate treatment toward plaintiff.

### COUNT V

### (Retaliation and Reprisal)

80. Plaintiff incorporates by reference the facts alleged in paragraphs 1 through 79 of this Complaint.

81. The defendant, by and through its employees and agents intentionally retaliated against the plaintiff for his opposition to unlawful employment practices.

82. The defendant, by and through its employees and agents took adverse actions toward the plaintiff because of his engagement in protected activities.

### COUNT VI

### (Intentional Infliction of Emotional Distress)

83. Plaintiff incorporates by reference the facts alleged in paragraphs 1 through 82 of this Complaint.

84. Plaintiff seeks recovery against the defendant for damages sustained as the result of the defendant, by and through its employees and agents for its outrageous and harmful conduct toward the plaintiff.

85. The defendant, by and through its employees and agents intentionally inflicted emotional distress.

**COUNT VII**

**(Punitive Relief)**

86. Plaintiff incorporates by reference the facts alleged in paragraphs 1 through 85 of this Complaint.

87. In view of the conduct of the defendant, by and through its employees and agents, defendant should be required to compensate plaintiff for defendant's malicious and willful conduct toward plaintiff.

**WHEREFORE,** the plaintiff prays that the Court:

A. Declare the actions complained of herein illegal, and issue a permanent injunction enjoining the defendant from continuing its employment practices based on race and color, disparate treatment and retaliation and reprisal.

B. Order that the plaintiff be awarded $500,000.00 in compensatory damages.

C. Order that the plaintiff be awarded $137,000.00 in loss wages.

D. Order that the plaintiff be awarded $500,000.00 for the intentional infliction of emotional distress.

E. Order that the plaintiff be awarded $500,000.00 for pain and suffering, inconvenience, embarrassment and mental anguish.

F. Order that the plaintiff be awarded $500,000.00 for retaliation and reprisal.

G. Order that the plaintiff be awarded $6,000,000.00 in punitive damages.

H. Award the plaintiff his cost, expenses and reasonable attorney fees.

I.  Grant such other and further relief as may be just and necessary to grant complete implementation of the relief ordered.

Respectfully submitted,

_____
Bernard C. Coleman, Jr.

Attorney for Plaintiff

D.C. Bar No. 437011

1718 Seventh Street, N.W.

Washington, D.C.  20001

(202) 232-6970

(202) 232-3666(Fax)

**JURY DEMAND**

Plaintiff demands trial by jury as to all issues contained herein.

Dated:  October 20, 2005